IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAL-MART REAL ESTATE BUSINESS TRUST, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No. RDB-21-02319 |
| | * | |
| GARRISON REALTY INVESTORS, LLC, | * | |
| | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

This case features a contract dispute between Plaintiff Wal-Mart Real Estate Business Trust ("Walmart") and defendant Garrison Realty Investors, LLC ("Garrison") over a Ground Lease governing a parcel in Owings Mills, MD (the "Premises"). In 2001, Walmart leased the Premises from Garrison for an initial period of twenty years to open a Sam's Club and a Walmart. (Compl. ¶¶ 1, 27.) After the Sam's Club closed in 2018, Walmart declined to renew the Ground Lease, and elected to exercise its contractual right to demolish the building, but was unable to obtain the requisite permits from Baltimore County. (*Id.* ¶¶ 40–62.) Walmart now alleges that Garrison interfered with its right to raze the property by writing to Baltimore County officials and asking them to deny its permit application. (*Id.* ¶¶ 70–98.)

Currently pending are Garrison's Motion to Dismiss for Failure to State a Claim (ECF No. 10) and Walmart's Motion to Amend the Complaint to Drop Count Four (ECF No. 15). In support of its dispositive motion, Garrison offers a letter that its attorneys sent to several Baltimore County officials on June 28th, 2021 (the "June 28 Letter"), informing the County

that Garrison had not approved the proposed demolition, and asking them to deny Walmart's permit for possible violations of the Baltimore County stormwater code. (*See* June 28 Letter, ECF No. 10-2.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Walmart's Motion to Amend the Complaint to Drop Count Four (ECF No. 15) is **GRANTED**, and Garrison's Motion to Dismiss for Failure to State a Claim (ECF No. 10) is **DENIED** with respect to the remaining counts, Counts One, Two, and Three.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The following facts are reviewed as alleged in Walmart's operative Complaint and incorporated documents. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (holding that courts may "consider documents that are explicitly incorporated into the complaint" and documents submitted by the movant that are "integral to the complaint").

### I.    The Ground Lease

On December 9, 2000, Walmart and Garrison executed a Ground Lease governing a parcel of land located at 9750 Reisterstown Road, in Owings Mills, Maryland (the "Premises"). (Compl. ¶¶ 1, 22–26; *see also* Ground Lease, ECF No. 1 Ex. 1.) The Ground Lease ran for an initial twenty-year term running from August 1, 2001 to July 31, 2021, with up to fourteen optional five-year extension periods. (Compl. ¶¶ 27–28; Ground Lease §§ 2(c), 2(d).) It was

presumed that Walmart would renew the Ground Lease unless Walmart gave Garrison written notice of its election not to renew at least ninety days prior to the end of the term. (Compl. ¶ 28; Ground Lease § 2(d).) Walmart also agreed to a fixed rent during the term of the Lease. (Compl. ¶ 31.) Specifically, the Lease established a fixed $ 1,860,000.00 annual rent for the first ten years of the initial twenty-year term, $ 1,971,600.00 for the subsequent ten years, and $ 2,089,896.00 for each five-year extension period. (Ground Lease § 3(b)). During the term of the Lease, Garrison warranted that Walmart would "quietly have and enjoy the Premises . . . without hindrance by anyone claiming by or through [Garrison]." (*Id.* 17(a).) Garrison further represented that it had fee simple title at the time of execution, and that it would convey the Premises "free from all liens and encumbrances and from any title defects which would prohibit [Walmart] from exercising all of its rights granted under [the Ground Lease]." (*Id.* § 17(b).)

Walmart's objective in entering the lease was to construct a new building on the Premises "to be initially occupied by a Sam's Club and a Wal-Mart." (*Id.* § 1.) At the time the Ground Lease was executed, the Premises housed "an approximately 400,000 square foot warehouse and related improvements." (Ground Lease § 5(f).) The parties agreed Garrison would tear down the warehouse to prepare for Walmart's construction, (*id.* § 6(e)), and that Walmart would construct new buildings to house the planned establishments, (*id.* § 5(f)). Thereafter, throughout the Lease term, Walmart was authorized to "construct any buildings or other improvements on the premises provided that they shall be in accordance with all applicable building regulations." (*Id.* § 6(a).) Walmart would retain title to these improvements for the duration of the Lease. (*Id.*)

3

The parties agreed to cooperate in pursuit of these renovations. Walmart promised to keep Garrison informed of "the status of [its] plans for the Site Work" and "the status of [its] Approvals (including Site Work Approvals)." (*Id.* § 6(c).) Concurrently, Garrison averred that it was "familiar with the process for obtaining site and building permits in Baltimore County." (*Id.* § 6(c).) Accordingly, Garrison promised to "use its experience to help [Walmart] obtain all of [Walmart's] approvals . . . as promptly as reasonably possible," and to "cooperate . . . to enable [Walmart] to complete construction of the improvements that [Walmart] desires to construct on the Premises." (*Id.* § 6(c).)

Concerned with protecting the unique appearance and branding of Walmart and Sam's Club stores, Walmart specifically sought the right to demolish improvements without landlord approval. (Compl. ¶¶ 5–7, 32.) "[Garrison] knew and understood that control over the design, appearance, use, modification, and disposition of the improvements was of the essence to Walmart." (Compl. ¶ 34.) Accordingly, the Ground Lease also contemplated that Walmart may need to demolish the improvements it made to the Premises. Section 6(a) of the Lease provides that Walmart "may *at its sole discretion* raze" any improvements it has constructed on the Premises "and reduce it to a slab." (Compl. ¶ 36; Ground Lease § 6(a) (emphasis added).) This right was conditioned on Walmart's generalized obligation to "comply with all laws and regulations of any government authority with respect to the Premises." (*Id.* §§ 7, 22.)

## II.  Termination and Demolition

Walmart claims that it spent $8,500,000.00 to complete the contemplated construction. (Compl. ¶¶ 29–30.) Walmart contends that "[these] improvements have appreciated in value and are worth substantially more today." (Walmart's Resp. Opp. 6; *see also* Compl. ¶¶ 29–30.)

In a letter incorporated into the Complaint by reference, Garrison appraised the improvements at a value of $35 million in July 2021. (Compl. ¶ 30; *accord* July 12 Letter, ECF No. 1 Ex. 5.) Throughout the initial twenty-year term of the Lease, Plaintiff operated the Walmart store out of the building's upper level and operated the Sam's Club out of the building's lower level. (*Id.* ¶¶ 39–40.) Walmart timely paid all rent throughout this term. (*Id.* ¶ 41.)

In 2018, Walmart permanently closed the Sam's Club store on the Premises. (*Id.* ¶ 40.) After the Sam's Club was shuttered, Walmart attempted to negotiate a reduction in rent for the upcoming renewal terms, as it was no longer using the now-vacant and unused lower level that the Sam's Club had occupied. (*See id.* ¶¶ 42–45.) Garrison did not accept Walmart's terms. (*Id.* ¶ 44.) As Walmart viewed "the prospect of an automatic five-year renewal under existing Lease terms" as "economically unacceptable," it decided to terminate the Lease, (*id.* at ¶ 45; Garrison Mem. Supp. Summ. J. 5, ECF No. 10-1.) On April 29, 2021, Walmart notified Garrison that it had elected not to renew the Lease, resulting in its termination following the term ending July 31, 2021. (Compl. ¶ 45.)

After providing notice of termination to Garrison, Walmart elected to exercise its rights under Section 6(a) to raze its improvements to slab, and retained Bohler Engineering, a demolitions contractor, to complete the demolitions work prior to the termination of the Lease. (*Id.* ¶¶ 47–50.)[1] Walmart applied for a permit from Baltimore County's Department of Permits, Approvals, and Inspections (the "Department") on June 11, 2021. (*Id.* at ¶¶ 51–52.)

---

[1] Walmart projected that it would receive a permit from Baltimore County on July 16, 2021, leaving it exactly fifteen days to raze the property in compliance with applicable laws. (Compl. ¶¶ 49–51.) Accordingly, Garrison insists that Walmart could not have completed the demolition in time for the permit denial. (Garrison's Mem. Supp. 6.) However, Walmart alleges in the Complaint that it would have completed its work "well ahead of schedule." (Compl. ¶¶ 52–53.) At this stage in the litigation, this Court takes Walmart's well-pleaded allegations as true—not Garrison's.

On June 28, Garrison sent a letter (the "June 28 Letter") to six high-level county officials,

including the County Executive, the County Attorney, and the Director of the Department of

Environmental Protection and Sustainability, opposing Walmart's application. (*See* June 28

Letter, ECF No. 10-2.) In the June 28 Letter, Garrison opined as follows:

> It has come to Garrison's attention that Chrissie Baur of Bohler Engineering
> has submitted the above-referenced application for a permit to "RAZE TO
> SLAB TWO BUILDINGS. WALMART 151076SF & SAMS CLUB
> 141686SF" on the Garrison Property. **Garrison was not contacted or
> consulted prior to the submission of the application and has not
> authorized Ms. Baur or Bohler Engineering to seek such a permit, let
> alone to perform the described work.** While it has not received confirmation,
> Garrison suspects that Bohler is acting on behalf of Garrison's current lessee of
> the property, whose lease will expire at midnight on July 31, 2021. **Please be
> advised that the proposed demolition would violate the Baltimore County
> Code, including at least those provisions relating to storm water
> management as discussed below in this letter.** It would also result in a
> violation of Garrison's obligations pursuant to the Deed of Declaration and
> Easement granted to Baltimore County on April 8, 2004. Accordingly, Garrison
> respectfully requests that the permit be withheld until such time as the issues
> raised in this letter are addressed by Bohler Engineering in order to avoid
> substantial resulting environmental liability to Garrison and immediate and
> irreparable harm to the Garrison property and the environment.

(*Id.* at 1 (emphasis added).) Garrison spent the remainder of this letter opining that the

proposed demolition would violate provisions of the County Code relating to stormwater

management. (*Id.* at 1–3.) Garrison accordingly asked the Department to reject the application

unless Walmart "demonstrates . . . that these items will be addressed" and complies with state

and local code requirements. (*Id.* at 2.)

The County did not issue the requested permit, and Walmart surrendered the Premises

on July 31, 2021, without completing its planned demolition efforts. (Compl. ¶¶ 15, 61–62.)

As a result, "[Garrison] is now in possession and control of both the Premises and the valuable

improvements bought and paid for by Walmart." (*Id.* ¶ 62.) On September 9, 2021, Walmart

filed its operative Complaint against Garrison, alleging breach of contract (Count One), unjust enrichment (Count Two), and seeking specific performance (Count Three) and a declaratory judgment (Count Four). (*Id.* ¶¶ 70–103.) Now pending are Garrison's Motion to Dismiss (ECF No. 10) and Wal-Mart's Motion to Amend its Complaint to Drop Count Four (ECF No. 15). Both motions are ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted).

To survive a motion under Fed. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of

those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations articulated in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In evaluating Garrison's Motion to Dismiss, this Court will consider the text of the Ground Lease, which was attached to Walmart's Complaint and explicitly incorporated into the Complaint by reference. (*See, e.g.*, Compl. ¶¶ 23–24, 30.)

Additionally, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 86 (E.D.Va. 2007)) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, this Court shall consider the June 28 Letter and its various attachments, offered by Garrison in support of Garrison's Motion to Dismiss. (June 28 Letter.) These documents

are "integral to the Complaint," *Goines*, 822 F.3d at 166, which directly refers to Garrison's communication with the Department as the basis of Walmart's claims. (*See, e.g.,* Compl. ¶¶ 54–56, 60, 68, 80–81, 88–89, 97.) As the "very existence" of the June 28 Letter "gives rise to the legal rights asserted," *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611, this Court may consider it in the context of the instant Motion to Dismiss.

## ANALYSIS

As noted above, Walmart's operative Complaint alleges breach of contract (Count One) and unjust enrichment (Count Two), and seeks specific performance (Count Three) and a declaratory judgment (Count Four). (Compl. ¶¶ 70–103.) Walmart has moved to amend its Complaint to drop Count Four, and Garrison does not oppose this motion. (ECF No. 15; *see* Compl. ¶¶ 70–103.) Accordingly, this Court **GRANTS** Walmart's Motion to Amend to Drop Count Four (ECF No. 15).

Walmart's argument on the remaining Counts is that Garrison, by communicating with Baltimore County officials and pressing them to deny Walmart's application for a demolition permit, interfered with its planned demolition and effectively converted millions of dollars of Walmart improvements. (Walmart Resp. Opp. Summ. J. 1–3, ECF No. 14.) Garrison contends that the Department must have denied Walmart's application because the planned demolition would have violated provisions of the Baltimore County Code related to stormwater management. (Garrison Mem. Supp. 2.) This counterargument relies entirely on inferences about the County's reasons for denying Walmart's permit application. At the motion to dismiss stage, such inferences cannot be drawn in the movant's favor. Accordingly, Garrison's Motion to Dismiss is **DENIED** as to all remaining Counts.

## I.  Breach of Contract (Count One)

In Count One of the operative Complaint, Walmart asserts that Garrison breached Sections 6(a), 6(c), and 17(a) of the Lease, as well as the implied duty of good faith and fair dealing. (Compl. ¶¶ 70–82.) These allegations center on the language of June 28 Letter and its impact on the County's permitting decision.[2] Walmart alleges that "[Garrison] sought to frustrate [Walmart's right to raze its improvements] by misleading government officials about the need for its authorization to proceed." (Walmart Resp. 17–18.) Garrison counters that Walmart's allegation of a causal relationship between the Letter and the denial of its application is too speculative.[3] At this early stage in the litigation, Garrison's argument relies on inferences that cannot be drawn in Garrison's favor.

---

[2] Under the "exhibit prevails" rule, "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), . . . the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Walmart contends that this rule should not apply, citing *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 168 (4th Cir. 2016), in which the United States Court of Appeals for the Fourth Circuit noted that documents created by a defendant "may reflect the defendant's version of contested events or contain self-serving, exculpatory statements," and that "'[t]reating the contents of such a document as true simply because it was attached to or relied upon in the complaint . . . 'would enable parties to hide behind untested, self-serving assertions.'" 822 F.3d at 168 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. South Bend*, 163 F.3d 449, 456 (7th Cir. 1998)) (Walmart Resp. Opp. 8 n.5.) However, Garrison offers the June 28 Letter only as evidence of the statements Garrison made to Baltimore County—not as evidence that Walmart's proposed demolition actually violated any of the stormwater management provisions of the Baltimore County Code. Put differently, this letter is significant for the existence of its assertions, whether or not those assertions are true. *Cf. Goines*, 822 F.3d at 168 (noting that "no portion of any of [plaintiff's] claims is dependent upon the trust of any statements contained" in the document at issue). Accordingly, the "exhibit prevails" rule applies in this case, and this Court will rely upon the contents of the June 28 Letter for its inquiry.

[3] As an initial matter, Garrison asserts that the letter it sent the Department constitutes a protected exercise of its First Amendment right to petition the Government for redress of grievances, requiring Walmart to indicate a waiver of these rights by clear and convincing evidence. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2486 (2018). However, Garrison offers no authority suggesting that the First Amendment has any applicability in a breach of contract action of this nature. Even if Garrison could support its position, Garrison misstates the nature of Walmart's allegations. Walmart does not seek to restrain Garrison's right to communicate with Baltimore County about putative violations of the Baltimore County Code—rather, Walmart alleges that Garrison provided County officials misleading information to induce the County to deny the requested demolition permit. (Walmart Resp. 25; Compl. ¶ 87.) *Cf. McDonald v. Smith*, 472 U.S. 479, 485 (1985) ("The right to petition is guaranteed; the right to commit libel with impunity is not."). Accordingly, Garrison's First Amendment argument has no bearing on this Court's analysis of Walmart's breach of contract claims.

Under Maryland law, the elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 345 (2011)). "The interpretation of a written contract is ordinarily a question of law for the court," *Grimes v. Gouldmann*, 232 Md. App. 230, 235 (2017) (citation omitted), as is the question of whether contract terms are ambiguous, *Calomiris v. Woods,* 353 Md. 425, 434 (1999). Additionally, under Maryland law, a court's interpretation of a contract is generally "limited to the four corners of the agreement." *Walton v. Mariner Health of Md., Inc.*, 391 Md. 643, 660 (2006). Courts "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time was effectuated." *General Motors Acceptance v. Daniels*, 492 A.2d 1306, 1310 (1985). It is "improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous." *Calomiris*, 353 Md. at 445 (citing *Canaras v. Lift Truck Servs.*, 272 Md. 337, 350 (1974)).

First, Walmart has plausibly alleged a violation of Section 6(a) and the implied covenant of good faith and fair dealing. (Compl. ¶¶ 70–82.) Section 6(a) grants Walmart the right to construct and raze improvements on the property, as follows:

> [Walmart] may at its own cost construct any buildings or other improvements on the Premises, provided that they shall be in accordance with all applicable building regulations. [Walmart] may make any changes or alterations to the Premises or the improvements thereon. Until the expiration or sooner termination of this Lease, title to any improvements located on the Premises shall remain in [Walmart], and [Walmart] may at its sole discretion raze such improvements and reduce it to a slab . . . .

(Ground Lease § 6(a).) Although Section 6(a) does not require Garrison to perform a specific duty, Garrison was obligated not to interfere with Walmart's rights under this provision.

11

"[U]nder the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Eastern Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000) (applying Maryland law); *accord Clancy v. King*, 405 Md. 541, 570–71 (2008) (quoting *Eastern Shore Mkts*, 213 F.3d at 184).[4]

Walmart contends that Garrison "frustrated" its right to raze improvements pursuant to Section 6(a) and violated the implied duty of good faith by inducing the County to deny Garrison's demolition permit based on misleading information. (Walmart Resp. Opp. 17–18.) The language of the June 28 Letter was provided by Garrison and is properly before this Court. (June 28 Letter.) *Cf. Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 (observing that evidence is "integral" to the complaint when its "very existence . . . gives rise to the legal rights asserted"). In the June 28 Letter, Garrison highlighted that it "was not contacted or consulted prior to the submission of the application and ha[d] not authorized" Walmart to apply for a permit or to raze its improvements on the Premises. (June 28 Letter 1.) Garrison also expressed concern that the proposed demolition would violate stormwater management provisions of the County Code and contravene Garrison's obligations under an easement it granted Baltimore County in 2004. (*Id.* at 1–3.) In its Complaint, Walmart alleges that this letter "created the misleading and incorrect impression that Walmart should have sought its permission or authorization,

---

[4] Garrison correctly notes that Maryland does not recognize an independent cause of action for violations of the covenant of good faith and fair dealing. *See Vernon Props., LLC v. Branch Banking & Tr. Co.*, 170 Md. App. 457, 472 (2006) ("A breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, e.g., breach of contract, than as a stand-alone cause of action for money damages."); *Magnetti v. Univ. of Md.*, 171 Md. App. 279, 285 n.3 (2006) (holding that alleged violations of this covenant "should be pursued under a plaintiff's breach of contract claim"). However, Walmart has alleged violations of good faith in the context of a breach of contract claim—it does not assert violations of this covenant as an independent cause of action.

without which the permit application was improper." (Compl. ¶ 56.) Walmart also alleges that this letter, sent without notice to Walmart, prompted the County to decline to issue a demolition permit, and thus prevented Walmart's demolitions project from moving forward. (*Id.* ¶¶ 13, 54, 57.) Taken as true and supplemented by the language of the June 28 Letter, these allegations are sufficient to plausibly allege a violation of Section 6(a), construed in light of the covenant of good faith and fair dealing.

None of Garrison's counterarguments suffice at this stage in the litigation. Garrison contends that the letter did not actually represent to the County that Walmart could not apply for a demolition permit or raze improvements without Garrison's approval. (Garrison Repl. 2–4.) However, such a requirement is a reasonable implication of Garrison's emphasis that it had not been "contacted or consulted prior to the submission of the application and ha[d] not authorized [the subcontractor] to seek such a permit, let alone to perform the described work." (June 28 Letter 1 (further noting that the proposed demolition would cause "immediate and irreparable harm to the Garrison property").) Although Garrison placed greater emphasis on alleged violations of the stormwater code in the body of the June 28 Letter, these statements, presented early in the letter, could plausibly be read to suggest that Garrison's "authorization" was required before Walmart could proceed.

Garrison also attempts to argue causation, suggesting that "Walmart's assertion that the County did not issue the permit ***because of Garrison's June 28 letter*** is both conclusory and implausible." (Garrison Mem. Supp. 15 (emphasis in original); *see also* Garrison Mem. Supp. 13 ("[I]n all probability, the County on its own would have identified any deficiencies in Walmart's permit application, given its potential exposure to civil and criminal liability.").

Walmart's right to raze the Premises was constrained by Section 7, which requires Walmart to "comply with all laws and regulations" during the term of the Ground Lease. (*Id.* at 13 (quoting Ground Lease § 7).) Accordingly, Garrison argues that the June 28 Letter could have influenced the County's denial only if Walmart's application violated the law and exceeded its authority under the Ground Lease:

> If Walmart's application did not comply with all applicable laws and regulations, then Walmart's deficient application, rather than Garrison's June 28 Letter, is the reason the County did not issue the permit. On the other hand, if Walmart's application complied with all applicable laws and regulations, then Garrison's June 28 Letter gave the County no reason at all to not issue the permit. It is also entirely plausible that the permit was not issued for entirely different reasons, unknown to Walmart and unrelated to Garrison and the June 28 Letter.

(Garrison Mem. Supp. 15.) This characterization overlooks Walmart's actual allegations: that the June 28 Letter misled the County to believe that Walmart was required to seek Garrison's approval before applying for a demolition permit, and that Walmart failed to obtain such approval. (Compl. ¶¶ 56–57.) For now, this Court is required to take these allegations as true. Whether the evidence ultimately supports Walmart's claim "is a factual matter appropriate for discovery, . . . not a motion to dismiss." (Walmart Resp. Opp. 25.)

Second, Walmart has plausibly alleged a violation of Section 6(c), which requires Garrison to help Walmart obtain the necessary permits for site work on the Premises. (Compl. ¶¶ 73, 79.) Section 6(c) provides as follows:

> [Garrison] shall cooperate with [Walmart] so as to enable [Walmart] to timely commence and complete construction of the improvements that Lessee desires to construct on the Premises substantially as shown on the Site Plan attached hereto as Exhibit A. [Walmart] acknowledges that [Garrison] is familiar with the process of obtaining site and building permits in Baltimore County, Maryland, and [Walmart] agrees, when requested by [Garrison] from time-to-time, to keep [Garrison] informed of the plans for the Site Work and for the construction of the Lessee's Building, and informed of the status of Lessee's Approvals

14

(including Site Work Approvals), to the end that [Garrison] shall use its experience to help [Walmart] obtain all of Lessee's approvals (including Site Work Approvals) as promptly as reasonably possible.

(Ground Lease § 6(c).) Section 6 expressly defines the term "Lessee's Approvals" as "all final and unappealable government permits and approvals required for Lessee . . . to construct improvements on the Premises substantially in accordance with the site plan," (*id.* § 6(b)), and defines "Site Work Approvals" as all such "approvals required to affect the initial Site Work," (*id.* § 6(g)). Walmart contends that Garrison violated this provision by opposing, rather than supporting, its application for a demolition permit. (Compl. ¶¶ 76–80.)

Garrison counters that Section 6(c) "sets forth the parties' rights and obligations with respect to the *construction*, not the *demolition*, of the Improvements." (Garrison Mem. Supp. 11 (emphasis added).) Consistent with this argument, the first sentence of Section 6(c) compels Garrison to help Walmart complete the Site Plan indicated in Exhibit A, (Ground Lease § 6(c), Ex. A), while the second sentence applies the defined term Lessee's Approvals, (*see id.* § 6(b).) However, the meaning of a contract provision "is not discerned by reading it in isolation, but by recognizing its relation to the other terms of the complete contractual relationship." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 310 (2004) (citing *Goldberg v. Goldberg*, 290 Md. 204, 213 (1981)). Viewing Section 6(c) in light of the entirety of Section 6, this provision may plausibly be read to encompass permits for the demolitions contemplated by Section 6(a). At least two textual ambiguities support this view—specifically, whether demolition permits are among the type of "building permits" discussed in the second sentence, and whether the scope of the undefined lowercase term "Lessee's approvals" towards the end of this provision encompasses approvals for demolition work. (Walmart Resp. Opp. 18–19.)

15

*Cf. Amlin Corp. Member Ltd. v. Medical Ben. Administrators of Md., Inc.*, No. RDB-13-3054, 2015 WL 4645563, at \*\*5–6 (D. Md. Aug. 4, 2015) (denying summary judgment based on use of undefined, lowercase term "fund" where contract otherwise defined uppercase term "Fund"). Discovery will be necessary to resolve the proper interpretation of this provision and the substance of Walmart's alleged violations.

Third, and finally, Walmart has alleged a violation of Section 17(a), which provides an express covenant of quiet enjoyment. (Compl. ¶¶ 76–80.) Section 17(a) provides that Walmart, "upon paying rent and complying with all the other provisions hereof, shall quietly have and enjoy the Premises during the term of this Lease without hindrance by anyone claiming by or through [Garrison]." (Ground Lease § 17(a).) The covenant of quiet enjoyment "insulates the tenant against acts or omissions on the part of the landlord, or anyone claiming under him, which interfere with the tenant's rights to the use and enjoyment of the premises for the contemplated purposes." *Bocchini v. Gorn Mgmt. Co.*, 69 Md. App. 1, 6 (1986) (quoting *Q C Corp. v. Md. Port Admin.*, 68 Md. App. 181, 198 (1986)). A landlord breaches the covenant of quiet enjoyment by "fail[ing] to provide something that 'goes to the essence of what the landlord is to provide.'" *Legg v. Castruccio*, 100 Md. App. 748, 779 (1994) (quoting *Stevan v. Brown*, 54 Md. App. 235, 247 (1983)). "[I]n the absence of an actual or constructive eviction, a tenant will have a claim for damages caused by conduct by the landlord that strikes at the essence of its obligations under the lease." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 183 Md. App. 710, 734 (2009); *accord Schuman v. Greenbelt Homes, Inc.*, 212 Md. App. 451, 475 (2013); *Sandler v. Exec.*

*Mgmt. Plus*, 203 Md. App. 399, 413 (2012).[5] "The scope or magnitude of the interference necessary to constitute a breach of the covenant of quiet enjoyment must be such as goes to the essence of what the landlord is to provide." *Nationwide*, 183 Md. App. at 266.

Garrison argues that it is undisputed that Garrison fulfilled the essence of the Lease by providing land on which Walmart could erect a two-story building. (Garrison Mem. Supp. 14.) However, Walmart specifically bargained for the right to demolish improvements on the Premises in order to preserve and protect its brand and investments. (*See* Walmart Resp. Opp. 4, 22.) Accordingly, Walmart alleges that its "right to raze the improvements went to the essence of what [Garrison] was to provide under the Lease—land on which Walmart could build retail locations whose use would be within Walmart's exclusive control." (Compl. ¶ 5; *see also* Compl. ¶ 7, 32, 34.) Walmart further claims that "[Garrison] knew and understood that control over the design, appearance, use, modification, and disposition of the improvements was essential to Walmart." (*Id.* ¶ 5.) Accepting these allegations as true for the purpose of Garrison's motion to dismiss, the same allegations that support violations of Sections 6(a) and 6(c) state a plausible claim for a violation of Section 17(a): Walmart alleges that Garrison, by interfering with its right to raze the property, deprived it of something "that strikes at the essence of its obligations under the lease." *Nationwide*, 183 Md. App. at 266. Whether these allegations are ultimately supported by the evidence is a matter for discovery. Accordingly, Garrison's Motion to Dismiss (ECF No. 10) is **DENIED** as to Count I.

## II.    Unjust Enrichment (Count Two)

---

[5] The covenant of quiet enjoyment applies both to residential leases and to commercial leases. *Bocchini*, 69 Md. App. at 5–6 (rejecting contrary assertion); *see, e.g.*, *Nationwide*, 183 Md. App. at 735; *Schuman*, 212 Md. App. at 474–75; *Q C Corp.*, 68 Md. App. at 195–99.

In Count Two of the operative Complaint, Walmart asserts that Garrison was unjustly enriched when it wrongfully retained the improvements that Walmart constructed on the Premises. (Compl. ¶¶ 83–90.) As Judge Hollander of this Court has previously noted, "an unjust enrichment claim deprives the defendant of benefits that would be inequitable for the defendant to retain." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 560 (D. Md. 2019) (Hollander, J.) (citation omitted). Under Maryland law, a claim for unjust enrichment requires three elements:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (quoting *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–52 (2000)). "[A] successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." *Id.* at 295–96 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659 (2005), *cert denied.*, 391 Md. 579 (2006)).

"It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) (citing *MTA v. Granite Const. Co.*, 57 Md. App. 766, 776 (1984). As Judge Hollander recently noted in *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576 (D. Md. 2019) (Hollander, J.):

> Unjust enrichment is a quasi-contractual cause of action that is a remedy 'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.' 'The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'

401 F. Supp. 3d at 597 (quoting *Cty. Comm'rs of Caroline Cty. v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96–97 (2000)). Some of Walmart's allegations under Count Two mirror its assertions under Count One, and are accordingly precluded by the Lease, which neither party disputes is an enforceable contract. (*See, e.g.*, Compl. ¶ 87 ("GRI obtained this benefit by wrongfully acting to thwart Walmart's exercise of its contractual right to raze the improvements to slab."); Compl. ¶ 90 ("The Lease does not address how GRI is to compensate Walmart for a material breach of Walmart's rights under Sections 6(a), 6(c), and 17(a).")). To the extent that Walmart's unjust enrichment claim arises out of putative violations of the Lease, such a claim is precluded by Maryland law.

However, the rule that a breach of contract claim precludes an unjust enrichment claim is subject to several exceptions. As relevant here, courts may allow unjust enrichment claims "when the express contract does not fully address a subject matter." *Dashiell*, 358 Md. at 100; *see also Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 23 (Ark. 2011) ("[T]he mere existence of a contract between the parties does not automatically foreclose a claim of unjust enrichment."); *Durm v. Am. Honda Fin. Corp.*, No. WDQ-13-0223, 2013 WL 6490309, at **6–7 (D. Md. Dec. 9, 2013) ("[W]hen an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." (quoting *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1996))).

Such is the case here. The core of Walmart's unjust enrichment claim is that Garrison has wrongfully retained possession of Walmart's valuable improvements to the Premises—not merely that Walmart violated the provisions of the Ground Lease. (*See* Compl. ¶¶ 83–91.) Walmart alleges that it built valuable improvements with an assessed value of $35,000,000.00, (*id.* ¶ 84), that Garrison retained possession of these improvements by thwarting Walmart's efforts to demolish them based on misleading information, (*id.* ¶¶ 87–89), and that Garrison is aware of the value that it has retained, (*id.* ¶ 86). Walmart contends that "it would be inequitable for [Garrison] to retain a benefit as valuable as the improvements without payment of their fair market value to Walmart." (*Id.* ¶ 91.) These allegations are sufficient to state a plausible claim for unjust enrichment without regards to the provisions of the Ground Lease, which "does not fully address" whether and how Walmart should be compensated in the event Garrison engages in wrongful conduct to take title to the improvements Walmart makes over the Lease term. *Dashiell*, 358 Md. at 100. Accordingly, Walmart has adequately stated a claim for equitable relief, irrespective of its breach of contract claim, and Garrison's Motion to Dismiss (ECF No. 10) is **DENIED** as to Count II.

## III.   Specific Performance (Count Three)

In Count Three, Walmart brings a claim for specific performance, seeking a court order "allowing it to raze the improvements to slab on such terms as the court deems just." (Compl. ¶¶ 92–98.) Specific performance is an equitable remedy available in breach of contract cases "where more traditional remedies, such as damages, are either unavailable or inadequate." *Yaffe v. Scarlett Place Residential Condo., Inc.*, 205 Md. App. 429, 454 (2012) (quoting *Archway Motors, Inc. v. Herman*, 37 Md. App. 674, 681 (1977)). As Judge Rubin of this Court has recently noted,

to plausibly plead entitlement to the equitable remedy of specific performance, a plaintiff must allege facts demonstrating the inadequacy of traditional damages and the necessity of this extraordinary remedy. *See Walgreen Co. v. Meritus Med. Ctr., Inc.*, No. 1:22-cv-01151-JRR, 2022 WL 2668181, at *5 (D. Md. Jul. 11, 2022) (Rubin, J.). Here, Walmart alleges that "the look and layout of the buildings housing Walmart and Sam's Club locations are part of Walmart's branding and are proprietary in nature," and would cause an irrevocable "competitive injury" if the Premises is subsequently leased to a competitor. (Compl. ¶¶ 93–94.) These allegations are sufficient to plausibly state Walmart's entitlement to the remedy of specific performance.

Garrison argues that Count Three should be dismissed "because specific performance is a remedy, not an independent claim or cause of action." (Garrison Mem. Supp. 18.) This characterization is correct. However, Walmart states a claim for breach of contract, providing a sufficient predicate to consider this remedy. *Cf. Int'l Fid. Ins. Co. v. Mahogany, Inc.*, No. JKB-11-1708, 2011 WL 3055251, at *2 (D. Md. Jun. 25, 2011) ("Although the complaint contains additional counts for injunctive relief and specific performance, these are remedies and not independent causes of action. To survive this motion to dismiss, therefore, the complaint need only make out a plausible claim for breach of contract."); *see, e.g.*, *Keyes Law Firm, LLC v. Napoli Bern Ripka Shkolnik, LLP*, No. RDB-17-2972, 2018 WL 3862249, at *9 (D. Md. Aug. 14, 2018) (declining to dismiss claim for "constructive trust" in light of plausibly pled breach of contract claim). Accordingly, Garrison's Motion to Dismiss (ECF No. 10) is **DENIED** as to Count III. Walmart's request for specific performance may proceed in conjunction with its breach of contract claim.

**CONCLUSION**

For the foregoing reasons, Walmart's Motion to Amend the Complaint to Drop Count Four (ECF No. 15) is hereby **GRANTED,** and Garrison's Motion to Dismiss for Failure to State a Claim (ECF No. 10) is hereby **DENIED.**

A separate Order follows.

Dated: August 24, 2022

_____/s/_____
Richard D. Bennett
United States District Judge