IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WAL-MART REAL ESTATE BUSINESS TRUST,** | * |
| Plaintiff/Counter-defendant, | * |
| v. | * Civil Action No.: 1:21-cv-02319-RDB |
| **GARRISON REALTY INVESTORS, LLC,** | * |
| Defendant/Counterclaimant | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF WALMART'S
MOTION TO DISMISS GRI'S COUNTERCLAIM**

Wal-Mart Real Estate Business Trust ("Walmart"), by its undersigned attorney, submits this Reply Memorandum in support of its Motion to Dismiss (ECF No. 22) ("Motion") the Counterclaim (ECF No. 19) filed by Garrison Realty Investors, LLC ("GRI").

**I. Introduction**

GRI's Opposition (ECF No. 23) ("Opp.") has abandoned the Counterclaim's assertion that the Complaint published an injurious falsehood. Now, according to GRI, Walmart's *lis pendens* notice (ECF No. 22-2) is the only source of an injurious falsehood.[1] According to GRI, "[b]ecause nothing about this action affects title or any leasehold interest in the Property, Walmart's *lis pendens* was filed without legal right or justification." Opp. at 1.

---

[1] As discussed below, *see infra* at 4-5, Count I of the Counterclaim had claimed that Walmart's Complaint and *lis pendens* notice were both acts of injurious falsehood. GRI's Opposition discusses only the *lis pendens* notice. By addressing only the *lis pendens* notice and ignoring the Complaint, GRI concedes that the absolute judicial privilege protects the Complaint.

This is false. If Walmart obtains a money judgment on Count One (breach of contract), that judgment "shall be satisfied only out of the proceeds of sale received upon the execution of such judgment and levy thereon against the right, title and interest of [GRI] in the Premises," or the consideration that GRI receives upon selling some or all of its "right, title and interest in the Premises," or rents or other income from the Premises receivable by GRI. ECF No. 1-2 at 16-17, § 30.[2] Walmart's *lis pendens* notice only gave notice of a public document, Walmart's Complaint, which GRI now concedes is not an injurious falsehood. Walmart's *lis pendens* notice expressly references the Premises' potentially "becom[ing] subject to execution and levy to satisfy any judgment" Walmart may obtain. ECF No. 22-2 at 1. The *lis pendens* notice is immunized by Maryland's absolute judicial privilege, and it is true. Count I of the Counterclaim should therefore be dismissed with prejudice.

Count II of the Counterclaim, purportedly for breach of contract, fares no better. Walmart's Motion made specific, detailed arguments demonstrating why each of four alleged breaches of contract fails to satisfy the Supreme Court's plausibility standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). GRI's Opposition fails to address these arguments. GRI has therefore waived its challenge to them.

To the extent that GRI would have the Court save Count II based on GRI's assertion that Walmart exercised its "sole discretion" to raze the Improvements to slab in bad faith, the Opposition is at odds with Maryland law. A breach of the covenant of good faith and fair dealing must be supported by an underlying breach of the relevant contract; exercise of a conceded contractual right – here, the right to raze – will not support the claim. Since GRI has waived its

---

[2] Unless otherwise stated, capitalized terms have the meaning assigned to them in the Counterclaim.

challenge to Walmart's arguments on the four alleged breaches under Count II, there is nothing to support a breach of the covenant of good faith and fair dealing. The Court should, therefore, also dismiss Count II of the Counterclaim with prejudice.

## II. Standard of Review Redux

It is not often that a reply should revisit the standard of review for a Rule 12(b)(6) motion. This case, however, is the exception that proves that rule; for there are two points that Walmart must make. The first concerns GRI's inexplicable reliance on overruled law. The second arises based on GRI's failure to address certain of Walmart's arguments for dismissal.

1. *Conley v. Gibson* has been overruled.

GRI's Opposition attempts to "*un*retire" a standard whose heyday ended over fifteen years ago. That is, in the passage closing out its discussion of the standard governing a Rule 12(b)(6) motion, GRI's Opposition states the following:

> A motion to dismiss for failure to state a claim should not be granted unless it seems "beyond doubt" that the claimant can prove no set of facts in support of their claim which would entitle them to relief. *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 811 (M.D.N.C. 2005); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (stating that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984))).

Opp. at 9. It is no accident that the cases cited in this passage all predate 2007. Their "no set of facts" formulation hearkens back fifty years earlier, to *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957), which was good law – until 2007. In that year, *Conley* was "retired" by *Twombly*. 550 U.S. at 579 (Stevens, J., dissenting).[3] This of course cashiered *Swierkiewicz* as well. *Francis v.*

---

[3] "Retired" was the gentler phrasing that Justice Stevens, in dissent, used to characterize what the 7-2 majority decision had done to *Conley*. *See Twombly*, 550 U.S. at 577 (Stevens, J.) (lamenting that *Conley* had been "interred … without a eulogy").

3

*Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (Niemeyer, J.) ("The standard that the plaintiffs quoted from *Swierkiewicz*, [534 U.S. at 514,] however, was explicitly overruled in *Twombly*.").

*Twombly*'s plausibility standard, not *Conley*'s "no set of facts" standard, governs Walmart's Motion. *Twombly*, 550 U.S. at 555 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).

2. Motion Practice: silence *is* consent

Once a Rule 12(b)(6) movant makes an argument for dismissal, the opponent ignores that argument at its peril. Failure to respond to an argument for dismissal "waive[s] any challenge to [that] argument." *Baker v. Balt. Police Dept.*, 2022 U.S. Dist. LEXIS 14985, at *11 (D. Md. Jan. 27, 2022) (Bennett, J.); *see Muhammad v. Maryland*, 2012 U.S. Dist. LEXIS 38225, at *9 n.3 (D. Md. Mar. 20, 2012) (Hollander, J.) ("Judges in this district have held that, by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim.") (collecting cases).

### III. Argument

A. **An Absolute Judicial Privilege Applies to Walmart's Filings.**

1. GRI has conceded Walmart's Motion as to the Complaint.

This Reply need only concern itself with GRI's argument concerning the *lis pendens* notice. GRI's Counterclaim *had* asserted that both Walmart's Complaint and *lis pendens* notice are defamatory. ECF No. 19, Counterclaim ¶ 50 ("This action and the notice of *lis pendens* are contrary to and falsely deny Garrison's title in the Improvements post-expiration of the Lease."); *id.*, ¶ 52 ("By virtue of their very filing, Garrison [sic] published this action and the notice of *lis*

4

*pendens* to the public at large."). Walmart's Motion argues that the absolute judicial privilege shields both publications. ECF No. 22-1 at 8-11. GRI's Opposition, however, concerns only the *lis pendens* notice:

> The thrust of Walmart's Motion as to Count I is that an "absolute privilege" inherent to all litigation somehow insulates it from liability for its improper filing of the *lis pendens*. Walmart argues that because its Complaint and *lis pendens* are documents filed in judicial proceedings, Walmart "enjoys absolute immunity from civil liability" for its maliciously false statement that this action clouds Garrison's title to the Property.
>
> ***
>
> Simply stated, Walmart's contention that its unjustified and unlawful filing of the *lis pendens* is immune from any and all liability simply because it is a judicial proceeding (or at least related to one) is facially flawed.

Opp. at 12-14.

Over the following five pages, GRI's argument concerns only the application of privilege to *lis pendens* notices. *Id*. at 14-18. By not contesting Walmart's argument that the absolute judicial privilege applies to the Complaint, GRI has waived any challenge it may have had to that argument. *Baker*, 2022 U.S. Dist. LEXIS 14985, at *11. Any remaining dispute concerning the absolute judicial privilege concerns only Walmart's filing of its *lis pendens* notice. Thus, as the *lis pendens* notice alone is the focus of GRI's Argument I.B, it is also the focus of this Reply.

   2.   Absolute judicial privilege applies to the *lis pendens* notice.

Injurious falsehood has been the subject of few reported appellate opinions in Maryland. *See Rite Aid Corp v. Lake Shore Investors*, 298 Md. 611, 617-18 (1984) (summarizing history through 1984). It is therefore unsurprising that there is no Maryland decision expressly addressing application of the absolute judicial privilege to injurious falsehood.[4] The leading Court of Appeals

---

[4] GRI accuses Walmart of "glossing over the fact that, on appeal, *Norman* did not involve an injurious falsehood claim." Opp. at 13 (citing *Norman v. Borison*, 418 Md. 630 (2011) ("*Norman II*"). This is false. *See* ECF No. 22-1 at 9 n.9 (quoting *Norman II*, and discussing its history, including that the plaintiff did not appeal dismissal of the injurious-falsehood count).

5

decisions concerning the tort and absolute judicial privilege nonetheless leave no doubt but that the absolute privilege applies to an alleged injurious falsehood arising from a *lis pendens* notice.

First, though, Walmart must address GRI's attempt to argue for application of a *qualified* privilege to a *lis pendens* notice. This argument relies on a tortured reading of Maryland law and contradicts both the Restatement (Second) of Torts and the majority position that the Second Restatement reflects.

   a. Absolute versus qualified privilege.

The Court of Special Appeals has applied a qualified privilege to non-judicial statements based on protection of "a present, existing economic interest" – in *Horning v. Hardy*, 36 Md. App. 419, 424, 429 (1977) (pre-suit statements impugning appellants' title to land and interfering with their efforts to sell developed lots); and in *Dixon v. Process Corp*. 46 Md. App. 198, 201-02, 206 (1980) (pre-suit statements interfering with real-estate settlements and threatening litigation). In both cases, the Court considered a qualified privilege because the party accused of injurious falsehood had asserted only a qualified privilege. *Horning*, 36 Md. App. at 428-29; *Dixon*, 46 Md. App. at 203.

Twice in one page, GRI asserts it is "inconceivable" that neither the Hardys nor Dixon would have invoked the absolute judicial privilege if it "had been available," and "inconceivable" that the Court of Special Appeals would not have considered the absolute judicial privilege. Opp. at 15. Here, however, that word does not mean what GRI thinks it means. Perhaps counsel for the Hardys and Dixon understood that even the threat of litigation is different from a statement made *in* litigation; that is, that the absolute judicial privilege was not "available" absent extant litigation or extrinsic statements related thereto. *See Norman II*, 418 Md. at 653. At the very least, it is hardly inconceivable that a Maryland appellate court would not consider an argument the parties

6

did not raise. *See, e.g., Herring v. Citizens Bank Trust Co.*, 21 Md. App. 517, 527-28 (1974) ("Of far greater significance to us is the fact that the court simply did not consider, and presumably was not asked to consider, the question of privilege. We cannot consider it as authority for a point which it did not discuss. What the appellants take to be silent implication may have been, rather, a declining to enter into areas which counsel did not raise. It may also have been a pure oversight."). Nothing about either *Horning* or *Dixon* "suggest[s] that Maryland courts do not apply the absolute privilege in the slander of title context." *But see* Opp. at 14. These two cases do, however, invite discussion of the difference between absolute and qualified privileges.

Both types of privilege "are based upon a policy that treats the ends to be gained by permitting defamatory statements as outweighing the harm that may be done to the reputation of others."[5] Restatement (Second) of Torts: Absolute Privilege Irrespective of Consent, Scope Note (1977).

The absolute judicial privilege is "properly to be classified as [an] immunity[y], since [it is] based upon the personal position or status of the actor" – in our case, for instance, as a party litigant. *Id.*; *see Norman II*, 418 Md. at 650-52 (a party's statements, whether made in the courtroom or in filings, are absolutely privileged even if they have "no relation to the judicial proceeding"). Thus, as the Court of Special Appeals observed, "[t]o date, Maryland courts have not held that redistribution or dissemination of pleadings to parties outside the judicial process will void privileged status, and we likewise decline to do so." *Norman v. Borison*, 192 Md. App. 405,

---

[5] GRI may at this point protest that Walmart is discussing privileges concerning defamation. The Second Restatement is clear, however: "The rules on absolute privilege to publish defamatory matter stated in §§ 583 to 592A apply to the publication of an injurious falsehood." Restatement (Second) of Torts § 635 (1977).

7

427 (2010) ("*Norman I*"), *aff'd*, *Norman II*. "[M]erely regurgitat[ing] [complaints] filed in court, does not void their privileged status." *Id*.

This absolute judicial privilege (or immunity) derives from the courts' desire to "foster the free and unfettered administration of justice." *Norman II*, 418 Md. at 651-52 (cleaned up; citation omitted). The Second Restatement of Torts explains it this way:

> These "absolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefore the privilege, or immunity, is absolute and the protection that it affords is complete. *It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor.*

Restatement (Second) of Torts: Absolute Privilege Irrespective of Consent, Scope Note (1977) (emphasis added).

Conditional or qualified privileges, on the other hand, "are more properly to be classified as privileges, since they arise out of the particular occasion upon which the defamation is published." *Id*. They are based upon a public policy that recognizes the desirability that "true information be given whenever it is reasonably necessary for the protection of the actor's own interests[,] the interests of a third person or certain interests of the public." *Id*. A qualified privilege protects "those who, for the purpose of furthering the interest in question, give information which, without their knowledge or reckless disregard as to its falsity, is in fact untrue." *Id*.

The Court of Appeals of Maryland has endorsed the motive-blind policy underlying absolute judicial privilege, and it has done so while discussing injurious falsehood. In *Beane v. McMullen*, the Court quoted at length from Dean Prosser's *Law of Torts*:

8

> Injurious falsehood, or disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage. *The cause of action founded upon it resembles that for defamation, but differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases.* The falsehood must be communicated to a third person, since the tort consists of interference with the relation with such persons. *But the plaintiff must plead and prove not only the publication and its disparaging innuendo, as in defamation, but something more.* There is no presumption, as in the case of personal slander, that the disparaging statement is false, and the plaintiff must establish its falsity as a part of his cause of action. Although it has been contended that there is no essential reason against liability where even the truth is published for the purpose of doing harm, *the policy of the courts has been to encourage the publication of the truth, regardless of motive.*

265 Md. 585, 607-08 (1972) (quoting W. Prosser, *Law of Torts*, at 919-20 (4th ed. 1971)) (emphasis added). This passage from *Beane* enunciates the "greater burden" relative to defamation that rests on an injurious-falsehood plaintiff, and thereby suggests a weighting of interests in favor of the injurious-falsehood defendant warranting application of the absolute judicial privilege. This passage also emphasizes that the same policy encouraging the publication of truth regardless of motive, recognized in *Norman*, applies to injurious falsehood in a judicial context.[6]

Moreover, the Second Restatement of Torts makes no distinction between absolute privileges applicable to the two torts: "The rules on absolute privilege to publish defamatory matter stated in §§ 583 to 592A apply to the publication of an injurious falsehood." Restatement (Second) of Torts § 635 (1977); *see id*., comment a (in relevant part) ("The circumstances under which there is an absolute privilege to publish an injurious falsehood are in all respects the same as those under which there is an absolute privilege to publish matter that is personally defamatory. In other words,

---

[6] GRI's assertion that "[t]he absolute privilege does not automatically extend to all tort claims," such as malicious use of process and abuse of process, *see* Opp. at 13, is beside the point, as neither claim has been asserted here.

whenever there is a privilege to publish statements that are both false and defamatory, there must be a privilege to publish those that are false but not defamatory."). If that were not clear enough, the Reporter's Notes to Section 635 cite cases from Alaska, California, Missouri, Montana, Tennessee, and Utah applying absolute privilege to *lis pendens*.[7]

        b.   *Lis pendens* applies in two sets of circumstances, and is not "ministerial."

*Lis pendens* concerns "the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment." *DeShields v. Broadwater*, 338 Md. 422, 433 (1995). It "generally arises in the context of disputes in which one or more parties have possession of real property and the potential of premature, precipitous, undue or untoward alienation of that property needs to be avoided." *Greenpoint Mortg. Funding, Inc. v. Schlossberg*, 390 Md. 211, 222-23 (2005). "Under the doctrine, an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation." *DeShields*, 338 Md. at 433. The "basic function" of *lis pendens* is "to advise a person who seeks to acquire an interest in property subject to *a lis pendens* that he will be bound by the outcome of the noticed litigation." *Greenpoint*, 390 Md. at 222. As *DeShields* stated:

> A *lis pendens* is a general notice of an equity to all the world, not notice of an actual lien. Consequently, *lis pendens* proceedings do not technically prevent alienation; they place a cloud on title to the property and create a priority in favor of the plaintiff, which, if the plaintiff succeeds on the merits of the claim, relates back to the date of the filing of the complaint and, thus, preserve for a successful plaintiff the opportunity to have a lien relating back to the date of the filing of the complaint.

---

[7] *See* Restatement (Second) of Torts § 635, Reporter's Note (1977) (citing *Zamarello v. Yale*, 514 P.2d 228 (Alaska 1973); *Albertson v. Raboff*, 295 P.2d 405 (Cal. 1956); *Houska v. Frederick*, 447 S.W.2d 514 (Mo.1969); *Hauptman v. Edwards*, 553 P.2d 975 (Mont. 1976); *Lann v. Third Nat'l Bank*, 277 S.W.2d 439 (Tenn. 1955); Hansen v. Kohler,550 P.2d 186 (Utah 1976); *see also*, *Oak Tree Partners, LLC v. Williams*, 458 P.3d 626, 643 (Okla. App. 2018); *Isobe v. Sakatani*, 279 P.3d 33, 48 (Haw. 2012); *Procacci v. Zacco*, 402 So.2d 425, 427 (Fla. Ct. App. 1981); *Kropp v. Prather*, 526 S.W.2d 283, 286 (Tex. Civ. App. 1975); *Stewart v. Fahey*, 481 P.2d 519, 520, 522 (Ariz. App. 1971).

338 Md. at 435 (quoting, *inter alia*, *Applegarth v. Russell*, 25 Md. 317, 323 (1866)) (cleaned up).

GRI's opposition quotes *DeShields*, to the effect that "*Lis pendens* has no applicability … **except to proceedings directly relating to the title to the property** transferred or in which the ultimate interest and object is to subject the property in question to the disposal of a decree of the court." Opp. at 10 (quoting *DeShields*, 338 Md. at 435) (emphasis as quoted). While GRI emphasized only half of this statement, *DeShields* makes it clear that *lis pendens* applies in *two* types of circumstances: (1) proceedings directly relating to title to property; and (2) proceedings whose object is to subject the property to the disposal of a decree of the court. 338 Md. at 435. Both types of circumstances apply here.

*Lis pendens* "applies to an action filed in a circuit court or in the United States District Court for the District of Maryland …." Md. R. 12-102.[8] There is a *judicial* procedure to terminate *lis pendens* upon motion for good cause shown. *See* Md. R. 12-102(c)(1).[9] A filing that applies to pending litigation and is subject to judicial oversight is neither "merely a ministerial action" nor "ancillary to, not a part of, a judicial proceeding." *But see* Opp. at 16 n.9.

    c.   The *lis pendens* notice is absolutely privileged.

With this understanding, it is clear why Walmart should be immune from suit for the filing of the *lis pendens* notice. As discussed below, *see infra* a 14, both sets of *DeShields* circumstances apply. As a party to litigation in which some or all of a money judgment in its favor might be satisfied only by execution and levy upon GRI's "right, title and interest" in the Premises, ECF

---

[8] Citations to Md. R. 12-102, which governs *lis pendens*, are to the current version of the rule. Walmart filed its *lis pendens* notice on September 10, 2021, the day after it filed this action. Rule 12-102 underwent a substantial revision effective April 1, 2022. For present purposes, however, the rule remains the same.

[9] One might ask why GRI has not availed itself of this judicial procedure, under Md. R. 12-102(c)(1), to undo what it claims is a slander built upon a sham. *See* Opp. at 11-12.

No. 1-2 at 16-17, § 30, and in which Walmart seeks a decree of specific performance respecting the same real property, Walmart had no choice but to file the *lis pendens* notice.

Moreover, where, as here, that *lis pendens* notice simply gives notice of a Complaint filed in judicial proceedings – a Complaint whose absolutely privileged character GRI has by its silence conceded – and where, as here, a "greater burden" rests on the injurious-falsehood plaintiff than on the defamation plaintiff, the motive-blind public policy underlying the absolute judicial privilege applicable in defamation cases applies with even greater force in injurious-falsehood cases.[10]

Walmart does not rely on only "two out of state cases applying the absolute privilege to *lis pendens* notices." *But see* Opp. at 17. In addition to Section 635 of the Second Restatement of Torts, *see supra* at 9-10, it cites both *Steelcast Ltd. v. Makary*, 2019 U.S. Dist. LEXIS 173228, *6 (N. D. Ill. Oct. 7, 2019), and *Lone v. Brown*, 489 A.2d 1192, 1196 (N.J. Super. 1985), as *examples* of cases so holding. ECF No. 22-1 at 10. As one court observed:

> nearly every jurisdiction to consider the question has extended the absolute privilege accorded statements made in the course of litigation to include the filing and/or recording of a *lis pendens* notice, provided the underlying litigation makes allegations affecting some ownership interest in the subject property.

*Ringier America, Inc. v. Enviro-Technics, Ltd.*, 673 N.E.2d 444, 447 (Ill. App. 1996) (citing cases from Alaska, Arizona, California, Florida, Mississippi, Montana, New Jersey, Utah, and Texas); *see supra* 10 n.7 (citing cases).

None of GRI's foreign cases militates against application of the absolute judicial privilege. *Warren v. Bank of Marion*, 618 F. Supp. 317 (W.D. Va. 1985), did indeed hold that the filing of a

---

[10] Another way to view the *lis pendens* notice is as a statement "connected contextually to a pending or ongoing proceeding." *Norman II*, 418 Md. at 653. Such a statement is deserving of the absolute judicial privilege. *Id*.

*lis pendens* notice is entitled to only a qualified privilege. *Id*. at 325. In light of intervening precedent from the Supreme Court of Virginia, however, *Warren*'s vitality is questionable. *See Bristol Cnty Ret. Sys. v. The Senior Tour Players Fund I, L.P.*, 2006 Va. Cir. LEXIS 337, at *50-51 (Va. Cir. Ct. Mar. 10, 2006) (citing *Donohoe Const. Co. v. Mount Vernon Assoc.*, 369 S.E.2d 857 (Va. 1988)) ("If the recordation of a memorandum of mechanic's lien is absolutely privileged, then … recordation of a memorandum of *lis pendens* must also be absolutely privileged."). The remaining cases GRI cites all hale from "states that *apply* the absolute privilege to a claim for slander of title." Opp. at 17 (citing cases) (emphasis added).

Because GRI's Opposition has failed to show why an absolute judicial privilege does not attach to a *lis pendens* notice concerning a Complaint concededly entitled to that very privilege, and because GRI's Opposition relies on a fundamental misconception of Maryland law and the weight of authority, the Court should dismiss Count I of the Counterclaim with prejudice.

3. As a matter of law, Walmart's filing of the *lis pendens* notice was a truthful act.

GRI's Counterclaim asserts that "[t]his action and the notice of *lis pendens* are contrary to and falsely deny Garrison's title in the Improvements post-expiration of the Lease." ECF No. 19, Counterclaim ¶ 50. As the Motion shows, Walmart does not contest that title to the Improvements passed to GRI. ECF No. 22-1 at 11 (quoting ECF No. 1-2 at 5-6, § 6(a); citing ECF No. 1 ¶ 23). So, the Counterclaim's assertion was and remains false. GRI, however, will not let this go. GRI's Opposition asserts that Walmart's Motion "makes no sense" because "[t]he very fact that Walmart filed a notice of *lis pendens* means it is contesting some aspect of Garrison's title to the Property." Opp. at 10 n.2.

The *lis pendens* notice at issue in this case is what the law intends. After this case was filed, Walmart gave notice of the filing - by then a public document – in the county where the

Improvements are located; i.e., in Baltimore County. Following *DeShields*, 338 Md. at 435, Walmart did so because this action is a proceeding "directly relating to the title to" the Premises, and because Walmart seeks a decree of specific performance concerning the Premises.

GRI fails to acknowledge that under Lease Section 30 ("Limitation of Liability") a money judgment in favor of Walmart on Count One of its Complaint

> *shall be satisfied only* out of the proceeds of sale received upon the execution of such judgment and levy thereon *against the right, title and interest* of the Lessor in the Premises and out of rents or other income from the Premises receivable by the Lessor or out of the consideration received by the Lessor from the sale or other disposition of all or any part of the Lessor's *right, title and interest* in the Premises (collectively, Landlord's equity) ….

ECF No. 1-2 at 16-17, § 30 (emphasis added). Thus, in light of Lease Section 30, these judicial proceedings "directly relat[e] to the title" to the Premises. *DeShields*, 338 Md. at 435. Furthermore, however much of a "sham" GRI may claim it to be, Opp. at 12, "the ultimate interest and object" of Walmart's Count Three "is to subject the [the Premises] to the disposal of a decree" of specific performance. *DeShields*, 338 Md. at 435.

A *lis pendens* notice simply alerts the world to judicial proceedings that (a) "directly relat[e] to the title to" property, or (b) seek to subject the property to "the disposal of a decree of the court." *See supra* at 10-11 (discussing *DeShields*, 338 Md. at 435). Judicial proceedings can have either quality without there being a dispute about where title currently lies. Boiled to its essence, a *lis pendens* notice tells the world, "there is litigation where the defendant has title, and the plaintiff seeks some relief that *could* affect that title."

This is what Walmart's *lis pendens* notice did, and all that it did. The *lis pendens* notice attached the Complaint, with exhibits, and expressly referenced Lease Section 30's "execution and levy" provision. ECF 22-2 at 1. This is truthful as a matter of law. Because an injurious falsehood must be *false*, the Court should dismiss Count I of the Counterclaim with prejudice.

4. Allegedly exercising a contractual right in bad faith does not state an actionable claim for breach of contract.

GRI claims that Walmart "concedes [it] has pled the necessary elements of an action for breach of contract – the existence of an enforceable contract and the counterparty's breach." Opp. at 2; *see id.* at 18 ("Walmart does not dispute that Garrison has pleaded facts sufficient to satisfy these elements"). This is false. *See, e.g.,* ECF No. 22-1 at 2 ("The Counterclaim … fails the plausibility test; that is, it does not state facts lifting … [the four] alleged breaches of the Lease from the merely possible to the plausible."); *id.* at 13 ("None of these four alleged acts is a breach of the Lease, let alone a material breach.").[11]

Walmart's Motion goes into exhaustive detail to demonstrate why each of the four alleged breaches of contract fails *Twombly*'s plausibility standard. ECF No. 22-1 at 13-20. GRI responded to none of these arguments. By its failure to respond, GRI has waived any challenge it might have had to them. *Baker*, 2022 U.S. Dist. LEXIS 14985, at *11.

All that is left is for the Opposition to claim that "Walmart's breach lies in its lack of good faith in its misguided attempt to raze the improvements on the Property to slab." Opp. at 2. This assertion is, however, a dead end; for GRI concedes, as it must, that during the Initial Term of the Lease Walmart had the "sole discretion" to raze the Improvements to slab, *id*. at 3, and title passed to GRI without incident at Lease end, *id*. at 8.

An alleged lack of good faith cannot, by itself, sustain a claim for breach of contract. As this Court noted:

---

[11] In arguing that the Counterclaim fails to allege a material breach of the Lease, Walmart was anticipating an argument that GRI might make. GRI has now put that issue to rest, *see* Opp. at 19 (conceding that GRI "is not attempting to rescind the Lease or arguing that Walmart's breach excused Garrison's performance, so the concept of materiality has no bearing on whether Garrison has pleaded a claim for breach of contract").

>Garrison correctly notes that Maryland does not recognize an independent cause of action for violations of the covenant of good faith and fair dealing. *See Vernon Props., LLC v. Branch Banking & Tr. Co.*, 170 Md. App. 457, 472 (2006) ("A breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, e.g., breach of contract, than as a stand-alone cause of action for money damages."); *Magnetti v. Univ. of Md.*, 171 Md. App. 279, 285 n.3 (2006) (holding that alleged violations of this covenant "should be pursued under a plaintiff's breach of contract claim").

ECF No. 17 at 12 n.4. Thus, so long as Walmart acted in accordance with the Lease, whatever it did under and pursuant to the Lease cannot be an actionable breach of the covenant of good faith and fair dealing. Walmart's alleged state of mind or alleged motive will not support an actionable claim for breach of the covenant of good faith and fair dealing.

Because GRI has failed to address Walmart's arguments that the Counterclaim's allegations of breach of contract are implausible; and because Walmart's alleged state of mind or motive is irrelevant absent an actionable breach of the Lease, the Court should dismiss Count II of the Counterclaim with prejudice.

## IV. Conclusion

For the foregoing reasons, the Court should grant Walmart's Motion to Dismiss GRI's Counterclaim with prejudice, and grant Walmart such other and further relief as the Court deems just and appropriate.

Dated:  October 26, 2022

/s/
Andrew Gendron (Bar No. 05111)
andrew.gendron@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
100 Light Street, Suite 1300
Baltimore, MD 21202
(t)  410.525.6414
(f)  410.779.3910

*Attorney for Walmart*