IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAL-MART REAL ESTATE BUSINESS TRUST, | * | |
| | * | |
| Plaintiff/Counter-defendant, | | |
| | * | |
| v. | | Civil Action No. RDB-21-2319 |
| | * | |
| GARRISON REALTY INVESTORS, LLC, | * | |
| | | |
| Defendant/Counter-plaintiff. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This case features a contract dispute between Plaintiff/Counter-Defendant Wal-Mart Real Estate Business Trust ("Walmart") and Defendant/Counter-Plaintiff Garrison Realty Investors, LLC ("Garrison") featuring a parcel in Owings Mills, MD (the "Premises"). (Compl. ¶ 1, ECF No. 1; Countercl. ¶ 1, ECF No. 19.) In 2001, Walmart leased the Premises from Garrison for an initial period of twenty years to open a Sam's Club and a Walmart store. (Compl. ¶¶ 1, 27.) After the Sam's Club closed in 2018, Walmart declined to renew the Ground Lease and elected to exercise its contractual right to demolish the building, but was unable to obtain the necessary permits from Baltimore County. (*Id.* ¶¶ 40–62.) Walmart and Garrison now allege competing breaches of the Ground Lease and assorted tort claims under Maryland law. (*See* Compl. ¶¶ 70–103; Countercl. ¶¶ 48–66.) Currently pending is Walmart's Motion to Dismiss Garrison's Counterclaim (ECF No. 22). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Walmart's Motion to Dismiss (ECF No. 22) is hereby **GRANTED.**

1

**BACKGROUND**

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The facts alleged in Walmart's Complaint were reviewed in this Court's opinion addressing Garrison's motion to dismiss, and are summarized below. *See Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*, RDB-21-02319, 2022 WL 3647781, at *1–3 (D. Md. Aug. 24, 2022). As relevant, these contentions are supplemented by the allegations set forth in Garrison's Counterclaim.[1] Additionally, this Court shall consider the text of the Ground Lease, which both parties have incorporated by reference. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (holding that courts may "consider documents that are explicitly incorporated into the complaint by reference" and documents submitted by the movant that are "integral to the complaint").

This litigation arises from Walmart's efforts to demolish a building located at 9750 Reisterstown Road, Owings Mills, Maryland (the "Premises"). *Garrison Realty Invs.*, 2022 WL 3647781, at *1. Walmart leased the premises from Garrison on December 9, 2000, in order to construct a new building that would be occupied by a Wal-Mart and a Sam's Club. *Id.* at *2. The parties' Ground Lease ran from August 1, 2001, to July 31, 2021, and authorized up to fourteen five-year extension periods, with automatic renewals unless Walmart gave written notice of termination at least 90 days prior to the end of the current term. *Id.* at *1. This lease

---

[1] Garrison's Counterclaim has been incorporated into its Answer as a single document, with paragraphs labelled separately. (*See* Countercl. & Ans., ECF No. 19.) For the purpose of this opinion, all citations to this document shall reference paragraphs in the Counterclaim, beginning on page 16.

authorized Walmart to construct any buildings or improvements on the Premises—and gave Walmart authority to raze those improvements and reduce the Premises to slab at its sole discretion. *Id.* at *2 (citing Ground Lease § 6(a)). These rights were conditioned on Walmart's generalized obligation to "comply with all laws and regulations of any government authority with respect to the Premises." *Id.* (quoting Ground Lease §§ 7, 22).

When the Sam's Club closed in 2018, Walmart attempted to negotiate a reduction in rent, but was unsuccessful. *Id.* Consequently, Walmart determined that a five-year renewal of the Ground Lease would be "economically unacceptable," and elected to terminate the lease as of July 31, 2021, at the conclusion of its initial twenty-year term. *Id.* (quoting Compl. ¶ 45). Walmart also decided to exercise its rights under Section 6(a) of the Ground Lease to demolish its building and raze the Premises to slab. *Id.* at *3. Walmart applied for a demolition permit from the Baltimore County Department of Permits, Approvals, and Inspections on June 11, 2021, and retained an engineering contractor to complete the demolition work prior to the termination of the Lease. *Id.* Walmart's contractor projected that the work would be completed before the end of the lease term. *Id.*

On June 28, 2021, Garrison sent a letter (the "June 28 Letter") to six high-level Baltimore County officials opposing Walmart's application—including the County Executive, the County Attorney, and the Director of the Department of Environmental Protection and Sustainability. *Id.* (citing June 28 Letter, ECF No. 10-2). In the June 28 Letter, Garrison declared that it "was not contacted or consulted prior to the submission of the application and ha[d] not authorized" Walmart to seek a demolition permit, and simultaneously argued that the proposed demolition work would violate applicable stormwater management regulations.

3

*Id.* (quoting June 28 Letter 1.) The County did not issue the requested permit, and Walmart surrendered the Premises on July 31, 2021, without completing the planned demolition. *Id.*

Walmart filed suit on September 9, 2021, alleging that Garrison breached Section 6(a) of the Ground Lease, and the implied covenant of good faith and fair dealing, by inducing Baltimore County to deny its demolition permit based on false information. *Id.* at *3, 5. The crux of Walmart's case is that Garrison's June 28 Letter prompted the County to deny its permit application, and that Garrison's letter "created the misleading and incorrect impression that Walmart should have sought its permission or authorization, without which the permit application was improper." *Id.* at *6 (quoting Compl. ¶ 56.) Consequently, Walmart brings claims against Garrison for breach of contract, unjust enrichment, and specific performance. *Id.* at *5. Garrison filed a motion to dismiss these claims, and this Court denied that motion in its entirety on August 24, 2022. *Id.* at *10.

Thereafter, Garrison filed an Answer and Counterclaim on September 7, 2022, alleging that Walmart breached various provisions of the Ground Lease, and slandered its title by filing a notice of *lis pendens* in Baltimore County. (Countercl. ¶¶ 1–2, ECF No. 19.)[2] The essence of Garrison's case is that this entire dispute is motivated by spite. Garrison claims that Walmart applied for a permit to raze the Premises in order to harm Garrison's business and to retaliate against Garrison for failing to enter a new lease with a decreased rate of rent. (*Id.* ¶¶ 24–33.) The defendant also claims that demolishing the building would have disrupted the stormwater

---

[2] Garrison also alleges that Walmart leveraged its political influence with the Speaker of the Maryland House of Delegates and the Chair of the Baltimore County Council to pressure Garrison to enter a new lease on terms favorable to Walmart. (*Id.* ¶ 26; Garrison Resp. Opp. 5–6, ECF No. 23.) However, these allegations are not referenced in support of any of the causes of action that Garrison raises in its Counterclaim.

management plan that governed the Premises—subjecting Garrison to civil and criminal liability under county regulations and requiring it to incur further environmental remediation costs. (*Id.* ¶¶ 28–30.) Finally, Garrison claims Walmart filed this litigation to spite Garrison, and filed a baseless notice of *lis pendens* to cloud Garrison's title—requiring Garrison to incur substantial attorney's fees in its defense, and preventing Garrison from marketing the property to institutional investors. (*Id.* ¶¶ 32, 34–39.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] Under the plausibility

---

[3] In the portion of its Response in Opposition outlining the applicable standard of review, Garrison contends that "a motion to dismiss for failure to state a claim should not be granted unless it seems 'beyond doubt' that the claimant can prove no set of facts in support of their claim which would entitle them to relief." (Garrison Resp. Opp. 9 (quoting *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 811 (M.D.N.C. 2005); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). This language reflects the antiquated pleading standard that predates the plausible pleading requirements articulated by the Supreme Court in *Iqbal* and *Twombly*, and is no longer applicable at the motion to dismiss stage.

standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

Ordinarily, when ruling on a motion to dismiss, a court's evaluation is generally limited to the allegations articulated in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). However, courts may consider documents that have been explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Additionally, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citation omitted). In evaluating Walmart's Motion to Dismiss, this Court will consider the Ground Lease, as this document is intrinsic to the allegations in the Complaint and Counterclaim, and has been incorporated into the Complaint by reference. (*See, e.g.*, Compl. ¶¶ 23–24, 30; Ground Lease, ECF No. 1, Ex. 1.)

## ANALYSIS

---

*See Francis v. Giacomelli*, 588 F.3d 184, 192 n.1 (4th Cir. 2009) ("The standard that the plaintiffs quoted from *Swierkiewicz*, however, was explicitly overruled in *Twombly*.").

**I.      Slander of Title (Count One)**

Slander of title, or injurious falsehood, is a cause of action derived from the traditional tort of defamation.[4] The essence of a slander of title claim is the publication of an injurious falsehood "derogatory to the plaintiff's title to his property, or its quality, or to his business in general . . . calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage." *Beane v. McMullen*, 291 A.2d 37, 49 (Md. 1972) (quoting Prosser, Law of Torts 919–20 (4th ed. 1971)); *accord Brass Metal Prods., Inc. v. E-J. Ents., Inc.*, 984 A.2d 361, 351 (Md. Ct. Spec. App. 2009); *Horning v. Hardy*, 373 A.2d 1273, 1277 (Md. Ct. Spec. App. 1977). "To support a claim for slander of title, a plaintiff must plead facts sufficient to show (1) a false statement, (2) that the false statement was communicated to someone else (publication), (3) malice, and (4) special damages." *Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 109 A.3d 639, 663 (Md. 2015). This cause of action "resembles that for defamation, but differs from it materially in the greater burden of proof resting on the plaintiff," who must prove falsity and pecuniary loss in all cases. *Beane*, 291 A.2d at 49; *see also Rite Aid*, 471 A.2d 735, 742 (Md. 1984) ("Special damages are those which result in a pecuniary loss directly or immediately from the conduct of third persons.").

The Counterclaim alleges Walmart clouded Garrison's title to the Premises by filing a frivolous lawsuit and a meritless notice of *lis pendens*, preventing Garrison from marketing the property at a favorable rate. (Countercl. ¶¶ 50, 52, 54.) The doctrine of *lis pendens* provides that

---

[4] As Walmart notes, there are very few Maryland appellate cases exploring injurious falsehood and slander of title. *See generally Rite Aid Corp. v. Lake Shore Investors*, 471 A.2d 735, 738–39 (Md. 1984) (recounting development of slander of title in the Maryland appellate courts).

7

a purchaser of real property that is subject to litigation affecting its title is bound by "the judgment of the court in the pending litigation." *Fishman v. Murphy ex rel. Est. of Urban*, 72 A.3d 185, 193 (Md. 2013). The plaintiff in such a case may preserve their interest by filing a notice of *lis pendens* in the land records of the county where the property is located. Md. Rule 12-102(b). The purpose of this notice is "to advise a person who seeks to acquire an interest in property subject to a *lis pendens* that he will be bound by the outcome of the noticed litigation." *Greenpoint Mortg. Funding, Inc. v. Schlossberg*, 888 A.2d 297, 304 (Md. 2005); *DeShields v. Broadwater*, 659 A.2d 300, 306 (Md. 1995) (characterizing *lis pendens* as "a general notice of an equity to all the world" (quoting *Applegarth v. Russell*, 25 Md. 317, 323 (Md. 1866))).[5] Consequently, a notice of *lis pendens* "place[s] a cloud on title to the property and '[creates] a priority in favor of the plaintiff which, if the plaintiff succeeds on the merits of the claim, relates back to the date of the filing of the complaint,'" preserving the plaintiff's interest against subsequent purchasers. *DeShields*, 659 A.2d at 306 (citation omitted) (alteration adjusted).

The doctrine of *lis pendens* is not applicable in all cases. To file a notice of *lis pendens*, "the nature of the action must be such that it directly involves the property." *Greenpoint*, 888 A.2d at 304. Accordingly, *lis pendens* applies only in "proceedings directly relating to the title to

---

[5] Doctrinally, *lis pendens* "literally means a pending lawsuit, referring to the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment." *DeShields*, 659 A.2d at 305. It consists of "[a] notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Greenpoint*, 888 A.2d at 303–04 (quoting Black's Law Dictionary 950 (8th ed. 2004)). At minimum, a notice of lis pendens must "state the names of the party against whom the lis pendens is claimed," "describe accurately the affected property," and "explain the nature of the lien right or the interest that the person filing the notice seeks to enforce." *Id.* at 307. In this case, Walmart attached its Complaint to its notice—satisfying these requirements by reference to the information set forth in its pleadings. (*See* Walmart Mem. Supp. 10 n.10; Notice of Lis Pendens, ECF No. 22-2.)

8

the property," or in litigation that aims "to subject the property in question to the disposal of a decree of the court." *DeShields*, 659 A.2d at 306. "It is generally recognized that *lis pendens* may not be predicated upon an action seeking recovery of monetary damages." *Warfel v. Brady*, 619 A.2d 171, 174 (Md. Ct. Spec. App. 2011); *see also Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, No. ELH-11-620, 2011 WL 2681196, at *5–7 (D. Md. July 8, 2011) (Hollander, J.) (discussing the boundaries of the doctrine of *lis pendens*).

Garrison claims that Walmart had no legitimate basis for filing a notice of *lis pendens*, as this case has no bearing on Garrison's title to the Premises. (Garrison Resp. Opp. 18, ECF No. 23.) As Garrison holds undisputed title and Walmart's claims are primarily contractual in nature,[6] the only claim for which *lis pendens* may be appropriate is Count III, in which Walmart seeks a decree of specific performance that would authorize it to raze the property to slab. (Compl. ¶¶ 92–98.) The plaintiff requests this equitable remedy to preserve "the look and layout of buildings housing Walmart and Sam's Club locations," which "are part of Walmart's branding and are proprietary in nature." (*Id.* ¶¶ 93–94.) Garrison claims this justification is demonstrably false, as Walmart "runs a website at walmartrealty.com, at which it lists for sale, rent, or sublease various former Wal-Mart and Sam's Club stores, including to its competitors." (Countercl. ¶ 33.) Thus, Garrison argues that Walmart's specific performance claim is a sham, manufactured to cloud Garrison's title and prevent Garrison from selling the Premises. (*See* Garrison Resp. Opp. 11–12 ("Walmart cannot prop up a slanderous notice of

---

[6] Both parties acknowledge that title to all improvements on the Premises reverted to Garrison at the end of the lease term. (*See* Walmart Mem. Supp. 11; Garrison Resp. Opp. 10 n.2; *see also* Ground Lease § 6(a).) Walmart's claims for breach of contract and unjust enrichment do not challenge the validity of this title.

9

*lis pendens* with a sham equitable claim premised on factual contentions for which it has never possessed any evidentiary support.").)

This argument strikes at the merits of this case and Walmart's motivation for filing it. However, the sole purpose of a notice of *lis pendens* is to inform prospective buyers that the property is subject to ongoing litigation—preserving the plaintiff's interest against subsequent purchasers until the court has rendered judgment. *See DeShields*, 659 A.2d at 305; *Greenpoint*, 888 A.2d at 222–23 ("*Lis pendens* has no specific separate existence apart from its basic function to advise a person who seeks to acquire an interest in property . . . that he will be bound by the outcome of the noticed litigation."); *accord Creative Dev. Corp. v. Bond*, 367 A.2d 566, 569 (Md. Ct. Spec. App. 1976) ("[T]he law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party."). Accordingly, a *lis pendens* notice merely provides the public with constructive notice of pending litigation. A plaintiff's right to make such a filing and to preserve its interests is not conditioned on the success of its claims.

There is no question that the Premises is the subject of this litigation, which includes a claim for specific performance that may affect its title. Even if discovery ultimately reveals that Walmart has no valid interest in protecting the appearance of its retail establishments, that Walmart cannot succeed on a specific performance claim, and that Walmart was motivated by spite when it decided to pursue this litigation, Walmart's notice of *lis pendens* is truthful as a matter of law.[7] As Garrison fails to state a claim for slander of title, Walmart's Motion to

---

[7] As Garrison has not plausibly alleged that Walmart's *lis pendens* notice is false, it is unnecessary to address the parties' extended arguments regarding the absolute privilege that attaches to defamatory statements made in judicial filings. (*See* Walmart Mem. Supp. 8–11; Garrison's Resp. Opp. 12–18.) "In

10

Dismiss (ECF No. 22) is hereby **GRANTED** with respect to Count I, and that Count is dismissed with prejudice.

## II. Breach of Contract (Count Two)

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001); *Noel v. PACCAR Fin. Corp.*, 568 F. Supp. 3d 558, 569 (D. Md. 2021). Under Maryland law, the elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011), *aff'd*, 43 A.3d 1029 (Md. 2012)). "The interpretation of a written contract is ordinarily a question of law for the court," *Grimes v. Gouldmann*, 157 A.3d 331, 334 (Md. Ct. Spec. App. 2017) (quoting *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 250 (2001)), as is the question of whether its terms are ambiguous, *Calomiris v. Woods*, 727 A.2d 358, 362 (Md. 1999) (citing *State Hwy. v. Bramble*, 717 A.2d 943, 949 (1998)).

In its Counterclaim, Garrison claims that Walmart violated Section 7, which charged it with a duty to act in accordance with applicable law, and the implied covenant of good faith

---

Maryland, judges, attorneys, parties and witnesses are absolutely privileged to publish defamatory matters during the course of a judicial proceeding." *Adams v. Peck*, 415 A.2d 292, 293 (Md. 1980). "This absolute privilege protects the person publishing the defamatory statement from liability even if his purpose or motive was malicious, he knew that the statement was false, or his conduct was otherwise unreasonable." *Id.*; *see generally Norman v. Borison*, 17 A.3d 697, 708–15 (Md. 2011); *Offen v. Brenner*, 935 A.2d 719, 723–27 (Md. 2007); *Reichardt v. Flynn*, 823 A.2d 566, 568–72 (Md. 2001) (discussing history and scope of absolute privilege). It appears that the Maryland appellate courts have not yet determined whether the absolute privilege is applicable to a notice of lis pendens, and states are split on this issue. *See In re Quinn*, 4 F.3d 986, 1993 WL 321583, at *7 n.14 (4th Cir. 1993) (Table) (collecting cases).

and fair dealing. (*See* Countercl. ¶¶ 57, 60.) Garrison alleges the following breaches of these provisions:

1. In initiating this action Walmart has breached its contractual duties to Garrison under the lease . . . ;

2. Walmart's actions in an effort to raze the Improvements to slab [were] for the calculated purpose of preventing Garrison from realizing the fruits to which it was entitled under the Contract . . . [and] were unreasonable, in bad faith, and outside the range of conduct contemplated by the Lease;

3. Walmart's application for a permit to raze the Improvements to slab without seeking or obtaining approval of a new storm water management plan and grading permits breached its obligation under Section 7 to act consistent with applicable law; [and]

4. Walmart's conduct in disabling the building's sprinkler systems violated . . . the Maryland and Baltimore County Fire Prevention Codes and constituted a material breach of [Section 7].

(Countercl. ¶¶ 2, 47, 59, 64–65; *see also* Walmart Mem. Supp. 13, ECF No. 18.) Walmart argues that each of these breaches is inadequately pled, and that Garrison fails to state a cognizable claim for breach of contract. (Walmart Mem. Supp. 12–20.)

Garrison fails to respond to Walmart's argument that these breaches have not been plausibly alleged. This Court has previously observed that a party's failure to respond to an argument ordinarily constitutes a waiver of that issue. *Baker v. Balt. Police Dept.*, RDB-20-3308, 2022 WL 252957, at *4 (D. Md. Jan. 27, 2022) ("Judges in this district have held that, by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim." (quoting *Muhammad v. Maryland*, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) (Hollander, J))). In any event, this Court concludes that two of Garrison's claims fail as a matter of law, and that the remainder are not plausibly alleged.

First, Garrison claims that Walmart has violated its obligations under the Ground Lease by "initiating this action." (Countercl. ¶ 2.) "The mere act of filing a lawsuit generally—and certainly in this case—does not alter the underlying contractual relationship between the parties." *White Marlin Open, Inc. v. Heasley*, 262 F. Supp. 3d 228, 255 (D. Md. 2017). Garrison does not allege that Walmart has signed and violated a covenant not to sue. *Cf. Kaye v. Wilson-Gaskins*, 125 A.3d 892, 905 (Md. Ct. Spec. App. 2016) ("A covenant not to sue . . . can generally be breached if performance is not subsequently rendered in accordance with the promise."). More fundamentally, Garrison offers no authority for the bold proposition that filing suit to enforce a contract constitutes a breach of that contract.

Second, Garrison claims that Walmart violated the implied covenant of good faith and fair dealing by "exercis[ing] its discretion to apply for a permit to raze the Improvements to slab for the sole purpose of harming Garrison." (Countercl. ¶¶ 62–63, 66 (emphasis omitted).) "Maryland law recognizes an implied covenant of good faith and fair dealing in all negotiated contracts." *E. Shore Markets v. JD Assocs. Ltd. P'ship,* 213 F.3d 175, 184 (4th Cir. 2000) (citing *Julian v. Christopher*, 575 A.2d 735, 739 (Md. 1990); *Food Fair Stores v. Blumberg*, 200 A.2d 166, 173–74 (Md. 1964)). "[T]he covenant of good faith and fair dealing 'does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract.'" *Id.* (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992)) (cleaned up). "Rather, the duty 'simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Id.* at 182–83 (quoting *Parker*, 604 A.2d at 531). "Stated otherwise, under the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of

13

injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Clancy v. King*, 954 A.2d 1092, 1109 (Md. 2008) (quoting *E. Shore*, 213 F.3d at 184).

However, accepting Garrison's argument would require this Court to rewrite the Ground Lease in contravention of basic principles of contract interpretation. Generally, as a court's interpretation of a contract is "limited to the four corners of the agreement," *Walton v. Mariner Health of Md., Inc.*, 894 A.2d 584, 594 (Md. 2006), it is "improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous." *Calomiris*, 727 A.2d at 368 (quoting *Canaras v. Lift Truck Servs.*, 322 A.2d 866, 873 (Md. 1974)). Section 6(a) of the Ground Lease provides that Walmart "may make any changes or alterations to the Premises or the improvements thereon," and "may at its sole discretion raze such improvements and reduce [the Premises] to a slab." (Ground Lease § 6(a).) This language does not constrain Walmart's authority to raze the Premises, and does not define or delimit the circumstances in which this discretion may be exercised. Accordingly, Garrison's argument asks this Court to impose limits on Section 6(a) that are not contemplated by the clear and unambiguous language of the lease. It would also subordinate Walmart's right to raze its improvements to slab to Garrison's right to receive title at the end of the lease term. This Court declines to do so. *Cf. Calomiris*, 727 A.2d at 368 ("It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract.'" (quoting *Canaras*, 322 A.2d at 873)).

Third, Garrison alleges Walmart violated Section 7 by applying for demolition permits "without seeking or obtaining approval of a new storm water management plan and grading permits." (Countercl. ¶ 59.) As noted above, Section 7 obligated Walmart to "comply with all

14

laws and regulations of any government authority with respect to the Premises" during the term of the lease. (Ground Lease § 7.) Garrison alleges, generally, that the proposed demolition "would allow the storm water from nearly 3.5 acres of impervious area to discharge in an uncontrolled manner" in violation of the current stormwater management plan and the Baltimore County Code; that such a demolition would require significant regrading and sediment control; and that it would require the removal of several retaining walls and pressure release walls, and the construction of security fencing. (Countercl. ¶¶ 28–30.) In light of these environmental impacts, Garrison argues that Walmart could not have completed the proposed demolition without a new stormwater management plan, "and that obtaining such approvals and permits ordinarily takes months and in some cases years." (*Id.* ¶ 30.)

These allegations are conclusory and hypothetical. As an initial matter, Garrison states legal conclusions about the requirements of the Baltimore County Code and the necessity of a new stormwater management plan that are not entitled to a presumption of truth. *Soc'y Without A Name*, 655 F.3d at 346 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation." (quoting *Iqbal*, 556 U.S. at 678)). More fundamentally, to the extent that Garrison makes factual allegations regarding the effect of the proposed demolition, its argument rests on hypotheticals regarding events that never transpired, and environmental impacts that never occurred. Both parties acknowledge that Walmart was denied a demolition permit, and that the proposed demolition never took place.

Finally, Garrison also alleges Walmart violated Section 7 by "disabling the building's sprinkler systems" in the weeks leading up to the proposed demolition. (Countercl. ¶¶ 40–47.) According to the Counterclaim, the Baltimore County Fire Department responded to an alarm

at the Premises on July 7, 2021, and discovered that "the building's fire detection and sprinkler systems had been disabled and were inoperable." (*Id.* ¶ 40.) Consequently, the Department directed Garrison to provide security personnel for "24-hour, on-site fire watch." (*Id.* ¶ 41.) Garrison contends that Walmart disabled the sprinkler system, and violated various provisions of the Maryland Fire Prevention Code, the Baltimore County Fire Prevention Code, and the National Fire Prevention Standards by doing so. (*Id.* ¶¶ 42–47.) Md. Code Regs. 29.06.01.08; Balt. County Code, Fire Prevention § 1:13.3.3.1; NFPA 1 § 16.1.1.

Although a closer question, Garrison fails to plausibly allege this putative violation. First, Garrison's claim that Walmart was responsible for disabling these alarms is conclusory: Although Garrison plausibly alleges that firefighters employed by the Baltimore County Fire Department found the building's fire and sprinkler system inoperative, Garrison offers no predicate facts to support its conclusion that Walmart was actually responsible for disabling it. Moreover, the relevant provisions of the NFPA authorize the owner of a building to disable its fire and sprinkler systems in preparation for demolition with approval of the Authority Having Jurisdiction ("AHJ").[8] Garrison does not allege that Walmart disabled these sprinklers without permission. As Garrison fails to state a claim for breach of contract, Walmart's Motion to Dismiss (ECF No. 22) is hereby **GRANTED** with respect to Count II, and that count is dismissed *without* prejudice.

---

[8] The NFPA defines an "Authority Having Jurisdiction" as "an organization, office, or individual responsible for enforcing the requirements of a [fire] code or standard, or for approving equipment, materials, an installation, or a procedure." NFPA 1 § 3.2.2 (2021).

16

## CONCLUSION

For the reasons articulated above, it is this 23rd day of February, 2023, hereby **ORDERED** that Walmart's Motion to Dismiss Counterclaim (ECF No. 22) is **GRANTED.** A separate order follows.


Dated: February 23, 2023

                                                                                     _____/s/_____
                                                                                  Richard D. Bennett
                                                                                  United States Senior District Judge